PALUMBO BERGSTROM LLP
Sean P. Connell, Esq. [7311]
700 South Third Street
Las Vegas, Nevada 89101
T: (877) 882-1979
F: (949) 440-7240

LEVI & KORSINSKY LLP
Nicholas I. Porritt, Esq. (*to be admitted pro hac vice*)
Adam M. Apton, Esq. (*to be admitted pro hac vice*)
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
T: (202) 524-4290
F: (202) 333-2121

*Attorneys for Movant Isreal Avecedo*


UNITED STATES DISTRICT COURT
DISTRICT OF NEVADA


| | |
|---|---|
| IN RE GALECTIN THERAPEUTICS, INC. SECURITIES LITIGATION | ) ) ) |

C.A. No. 3:14-CV-399-RCJ-(WGC)


**ISREAL ACEVEDO'S MOTION AND MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF MOTION TO APPOINT LEAD PLAINTIFF AND
APPROVE SELECTION OF LEAD COUNSEL**

Proposed lead plaintiff Isreal Acevedo ("Acevedo"), by his counsel, will hereby move

this Court for an Order (attached hereto): (i) appointing Acevedo as Lead Plaintiff; (ii) approving

Acevedo's selection of the law firm Levi & Korsinsky LLP to serve as Lead Counsel and

Palumbo Bergstrom LLP as liaison counsel; and (iii) granting such other and further relief as the

Court may deem just and proper.  In support of this Motion, Acevedo submits herewith a

Memorandum of Points and Authorities and the Declaration of Adam M. Apton, dated

September 29, 2014 (the "Apton Decl.").

## MEMORANDUM OF POINTS AND AUTHORITIES

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................................iii

I.      SUMMARY OF ARGUMENT ................................................................................ 1

II.     STATEMENT OF FACTS ....................................................................................... 2

III.    ARGUMENT ........................................................................................................... 5

     A.      The Court Should Appoint Acevedo as Lead Plaintiff ................................. 5

          1.    The Procedure Required by the PSLRA ............................................ 5

               a.   Acevedo Is Willing to Serve as Class Representative .......................... 6

               b.   Acevedo Has the Requisite Financial Interest in the Relief Sought by the Class ................................................................ 7

          2.    Acevedo Satisfies the Requirements of Rule 23(a) of the Federal Rules of Civil Procedure ................................................... 7

               a.   Acevedo's Claims are Typical of the Claims of all the Class Members ................................................................ 8

               b.   Acevedo will Adequately Represent the Class .................................. 9

     B.      Acevedo's Choice of Counsel Should Be Approved ................................. 10

IV.     CONCLUSION ..................................................................................................... 11

## TABLE OF AUTHORITIES

**Cases**

*Crawford v. Honig,*
  37 F.3d 485 (9th Cir. 1994) ................................................................................ 10

*Ferrari v. Gisch,*
  225 F.R.D. 599 (C.D. Cal. 2004) .......................................................................... 8

*Gen. Tel. Co. of the Southwest v. Falcon,*
  457 U.S. 147 (1982) .............................................................................................. 9

*Hanlon v. Chrysler Corp.,*
  150 F.3d 1011 (9th Cir. 1998) .............................................................................. 8

*Haung v. Acterna Corp.,*
  220 F.R.D. 255 (D. Md. 2004) ............................................................................. 8

*In re Cavanaugh,*
  306 F.3d 726 (9th Cir. 2002) ...................................................................... 2, 7, 8

*In re Drexel Burnham Lambert Grp.,*
  960 F.2d 285 (2d Cir. 1992) ................................................................................. 9

*In re Milestone Sci. Sec. Litig.,*
  183 F.R.D. 404 (D.N.J. 1998) .............................................................................. 8

*In re Oxford Health Plans, Inc. Sec. Litig.,*
  182 F.R.D. 42 (S.D.N.Y. 1998) ........................................................................... 8

*Maiden v. Merge Techs., Inc.,*
  No. 06-349, 2006 WL 3404777 (E.D. Wis. Nov. 21, 2006) ................................ 7

*Robidoux v. Celani,*
  987 F.2d 931 (2d Cir. 1993) ................................................................................. 8

*Takeda v. Turbodyne Techs., Inc,*
  67 F. Supp. 2d 1129 (C.D. Cal. 1999) ................................................................. 8

*Weiss v. York Hosp.,*
  745 F.2d 786 (3d Cir. 1984) ................................................................................. 9

**Statutes**

15 U.S.C. § 78u-4(a)(3)(A) ........................................................................................ 6

15 U.S.C. § 78u-4(a)(3)(B) ................................................................................. passim

**Rules**

Fed. R. Civ. P. 23(a) ...................................................................................... 2, 8, 9, 10

## I.       SUMMARY OF ARGUMENT

Presently pending before the Court is the consolidated securities class action lawsuit (the "Consolidated Action") brought on behalf of all persons who purchased the common stock of Galectin Therapeutic, Inc. ("Galectin" or the "Company"), between January 6, 2014 and July 28, 2014, inclusive (the "Class Period").[1]  Plaintiffs in the Consolidated Action allege violations of the Securities Exchange Act of 1934 (the "Exchange Act")[2] against the Company, James C. Czirr ("Czirr"), Peter G. Traber ("Traber"), and Jack W. Callicutt ("Callicutt") (collectively, "Defendants").[3]

The Private Securities Litigation Reform Act of 1995, as amended (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B), provides for the Court to appoint as lead plaintiff the movant with the largest financial interest in the litigation that has made a *prima facie* showing that he is an

---

[1] The Court's consolidation order on August 21, 2014 consolidated the following actions: (i) *Ballesteros v. Galectin Therapeutics, Inc., et al.*, 3:14-cv-00399-RCJ (the "*Ballesteros* Action"); (ii) *Gelzayd v. Galectin Therapeutics, Inc., et al.*, 3:14-cv-00412-MMD (the "*Gelzayd* Action"); and (iii) *Gombau v. Galectin Therapeutics, Inc., et al.*, 3:14-cv-01287-APG (the "*Gombau* Action"). Dkt. No. 7.

Two lawsuits, entitled *David Seidman v. Galectin Therapeutics*, Case No. SC-14-08-05-339 (the "*Seidman* Action") and *Deborah McHenry v. Galectin Therapeutics, Inc.*, Case No. SC-14-08-05-3393 (the "*McHenry* Action"), were filed in the Philadelphia Municipal Court, First Judicial District of Pennsylvania on August 5, 2014 alleging violations of Sections 10(b), as well as Rule 10b-5 promulgated thereunder, stemming from the same facts as alleged in the Consolidated Action.  The *Seidman* and *McHenry* Actions were subsequently removed to federal court in the Eastern District of Pennsylvania.

The Consolidated Action, as well as the *Seidman* and *McHenry* Actions, are awaiting transfer to the United States District Court for Northern District of Atlanta.

[2] Specifically, the Consolidated Action allege violations of Sections 10(b) and 20(a) of the Exchange Act, as well as Rule 10b-5 promulgated thereunder.

[3] All three putative class actions have been filed against Galectin, Traber, and Callicutt.  The *Ballesteros* Action and the *Gombau* Action also asserts claims against Czirr, while the *Galyzayd* Action does not.

adequate class representatives under Rule 23 of the Federal Rules of Civil Procedure. *See*, *generally*, *In re Cavanaugh*, 306 F.3d 726 (9th Cir. 2002). Acevedo lost approximately $60,840 as a result of the alleged fraud during the Class Period.[4] Moreover, Acevedo satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure in that his claims are typical of the claims of the Class, and they will fairly and adequately represent the interests of the Class.[5] As such, Acevedo meets the requirements of the PSLRA for appointment as Lead Plaintiff.

Accordingly, Acevedo respectfully requests that (a) Acevedo be appointed Lead Plaintiff; and (b) Levi & Korsinsky LLP ("Levi & Korsinsky") and Palumbo Bergstrom LLP ("Palumbo Bergstrom") be approved as Lead Counsel and Liason Counsel, respectively.

## II.    STATEMENT OF FACTS

Galectin is a developmental stage company engaged in the research and development of therapies for fibrotic disease and cancer. ¶ 2.[6] Defendant Czirr is, and at all relevant times was, the Company's Executive Chairman of the Board. ¶ 13. Defendant Traber is, and at all relevant times was, the Company's Chief Executive Officer ("CEO") and President. ¶ 14. Defendant Callicut is, and at all relevant times was, the Chief Financial Officer ("CFO") of the Company. ¶ 15.

---

[4] Acevedo's certification identifying his transactions in Galectin as required by the PSLRA, as well as a chart identifying his losses, are attached to the Apton Decl. as Exhibits A and B, respectively.

[5] The "Class" is comprised of all persons who purchased or otherwise acquired Galectin publicly traded securities during the Class Period. Excluded from the Class are defendants and their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns, and any entite in which defendants have or had a controlling interest.

[6] Citations to "¶ __" are to paragraphs of the Complaint for Violations of the Federal Securities Laws (the "Complaint") filed in the *Ballesteros* Action. The facts set forth in the Complaint are incorporated herein by reference.

The *Ballesteros* Action alleges that Defendants, during the Class Period, issued false and misleading statements regarding the Company's prospects as to one of its leading product candidates, GR-MD-02, which was being developed to treat NASH, a disease which leads to fatty build-up in the liver and potentially to cirrhosis and/or liver cancer.  ¶ 19, 37.   The Company throughout the Class Period issued press releases regarding GR-MD-02's progress, including press releases on the obtainment of a patent and the progress of the GR-MD-02's Phase I trial.  ¶ 20.  The Company's press releases and Defendants' statements represented the positive results of the first cohort of the Phase I trial, the progress being made in the second cohort of the Phase I trial, the safety of the drug, and the promising indications as to the efficacy of the drug.  ¶¶ 23-27.  However, various articles later revealed that the Company had strong ties with and has hired penny stock promoters to issue misleading press releases.  ¶¶ 30-32.  Within days of the publication of these articles, the Company posted a presentation on the Company's website concerning the results of the second cohort of patients in the Phase I trial of GR-MD-02; with analysts describing the results as "poor."  ¶ 33.

Defendants' misleading statements occurred throughout the Class Period.  Beginning on January 6, 2014, the Company announced that it received a U.S. patent for combination treatment for liver fibrosis and the importance of this intellectual property in the event that liver fibrosis could be treated with a combination of anti-fibrotic agents.  ¶ 20.  On March 31, 2014, the Company issued a press release, through which Defendant Traber stated "[w]e are extremely pleased with the positive results of the first cohort of our Phase 1 trial, which suggest a role for GR-MD-02 in the treatment of patients with fatty liver disease with advance fibrosis."  ¶ 24. Defendants continued to issue positive press releases in April and May 2014, disclosing the "significant progress" they were making with GR-MD-02, announcing the "positive changes in

3

biomarkers, suggesting a therapeutic effect [of GR-MD-02] on fibrosis," and the quick reenrollment of its second cohort of patients given the "urgent need" to identify treatment for fatty liver disease with advance fibrosis.  ¶¶ 25-26.  On July 24, 2014, Emerging Growth Corp. ("Emerging Growth"), issued a press release concerning Galectin which stated that the Company "is nipping at Intercept [Pharmaceuticals'] heels", a biotech Company who recently announced positive Phase II results for their own own drug to treat fatty liver disease, and touted the promising outlook for GR-MD-02 in what appears to be very valuable biotech sector.  ¶ 27.

The truth concerning the misleading press releases about the Company began to emerge on July 25, 2014 through a tweet by Adam Feuerstein ("Feuerstein"), a columnist on *TheStreet.com*, entitled "$GALT paying penny stock promoters to issue misleading PRs posted to Y!".  ¶ 30.   Three days later, on July 28, 2014, Bleeker Street Research published an article on *SeekingAlpha.com*, alleging the Company had "strong ties to stock promoters" which were engaged in a misleading campaign to bolster the Company's stock price.  ¶ 31.  That same day, Feuerstein published an article on *TheStreet.com* which revealed Galectin was paying Emerging Growth, through its parent penny-stock promotions company, TDM, to be its investor relations and marketing company and to issue misleading promotional campaigns to attract investors to the Company's stock.  ¶ 32.

Also, on July 28, 2014, Feuerstein published an article entitled, *Galectin Drug is a Fatty Liver Flop*, which stated in part that "about every biomarker for efficacy Galectin thought to measure, GR-MD-02 showed no difference from the placebo."  ¶ 34.   Feuerstein further remarked that "Galectin deemed the updated results from the phase I study to be a success because patients treated with GR-MD-02 reported no serious side effects, but of course, ineffective placebos rarely raise safety concerns."  ¶ 34.

The next day, July 29, 2014, the Company posted a presentation concerning the results of its second cohort of patients in GR-MD-02's Phase I trial. ¶ 33.  Despite the rosy picture the press releases have been painting concerning GR-MD-02, analysts interpreted the results as "poor."  ¶ 33.

In response to these revelations, the share price of Galectin's common stock dropped $8.84, or nearly 61% in one day of trading on unusually heavy trading volume, to close at $5.70 per share on July 29, 2014.  ¶ 35.

### III.  ARGUMENT

#### A.  The Court Should Appoint Acevedo as Lead Plaintiff

##### 1.  The Procedure Required by the PSLRA

Once the Court decides the consolidation motion, the PSLRA mandates that the Court decide the lead plaintiff issue "[a]s soon as practicable."  15 U.S.C. § 78u-4(a)(3)(B)(ii).  The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure."  15 U.S.C. § 78u-4(a) and (a)(3)(B).

The plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion for appointment of lead plaintiff.  15 U.S.C. § 78u-4(a)(3)(A).  The PSLRA requires the Court to consider within 90 days all motions filed within 60 days after publication of that notice by any person or group of persons who are members of the proposed class to be appointed lead plaintiff.  15 U.S.C. §§ 78u-4(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

     (aa)    has either filed the complaint or made a motion in response to a notice;

     (bb)    in the determination of the court, has the largest financial interest in the relief sought by the class; and

     (cc)    otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Acevedo satisfies the foregoing criteria and is not aware of any unique defenses that Defendants could raise against him.  Therefore, Acevedo is entitled to the presumption that he is the most adequate plaintiff to represent the Class and, as a result, should be appointed Lead Plaintiff in the Consolidated Action.

### a.     Acevedo Is Willing to Serve as Class Representative

On April 3, 2014, counsel in the first-filed action caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A) of the Exchange Act, which announced that a securities class action had been filed against Defendants, and which advised putative class members that they had 60 days to file a motion to seek appointment as a lead plaintiff in the action.[7]

Acevedo has reviewed a complaint filed in the pending Consolidated Action and has

---

[7] The first-filed action was filed in this Court on July 30, 2014.  On that same day, the Notice was published over *Business Wire*, a widely-circulated national business-oriented wire service. A copy of the Notice is attached as Exhibit C to the Apton Decl.

timely filed its motion pursuant to the Notice.

**b.    Acevedo Has the Requisite Financial Interest in the Relief**

**Sought by the Class**

The Court shall appoint as lead plaintiff the movant or movants with the largest financial loss in the relief sought by the action.  As demonstrated herein, Acevedo has the largest known financial interest in the relief sought by the Class.  *See* Apton Decl., Ex. B.  The movant who "has the largest financial interest in this litigation and meets the adequacy and typicality requirements of Rule 23 . . . is presumptively entitled to lead plaintiff status." *Maiden v. Merge Techs., Inc.*, No. 06-cv-349, 2006 U.S. Dist. LEXIS 85635, 13 (E.D. Wis. Nov. 21, 2006) (citing *In re Cavanaugh*, 306 F.3d at 732).

In connection with the Class Period, Acevedo purchased Galectin shares in reliance upon the materially false and misleading statements issued by Defendants, and was injured thereby. Acevedo suffered a substantial loss of $60,840.  *See* Apton Decl., Ex. B.  Acevedo thus has a significant financial interest in the outcome of this case.  To the best of his knowledge, there are no other applicants who have sought, or are seeking, appointment as lead plaintiff that have a larger financial interest and also satisfy Rule 23.

**2.    Acevedo Satisfies the Requirements of Rule 23(a) of the  Federal Rules**

**of Civil Procedure**

According to 15 U.S.C. §78u-4(a)(3)(B), in addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure."  Rule 23(a) provides that a party may serve as a class representative if the following four requirements are satisfied:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the

representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).

Of the four prerequisites to class certification outlined in Fed. R. Civ. P. 23, only two – typicality and adequacy – are recognized as appropriate for consideration at this stage.  *See Cavanaugh,* 306 F.3d at 730, n.5, 732.  Furthermore, only a "preliminary showing" of typicality and adequacy is required at this stage.  *See Takeda v. Turbodyne Techs., Inc*, 67 F. Supp. 2d 1129, 1136 (C.D. Cal. 1999).  Consequently, in deciding a motion to serve as Lead Plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the Lead Plaintiff moves for class certification. *See Cavanaugh,* 306 F.3d at 732; *see also Haung v. Acterna Corp.,* 220 F.R.D. 255, 259 (D. Md. 2004); *In re Milestone Sci. Sec. Litig.*, 183 F.R.D. 404, 414 (D.N.J. 1998).

 As detailed below, Acevedo satisfies both the typicality and adequacy requirements of Fed. R. Civ. P. 23, thereby justifying his appointment as Lead Plaintiff.

### a.      Acevedo's Claims are Typical of the Claims of all the Class Members

Under Rule 23(a)(3), typicality exists where "the claims . . . of the representative parties" are "typical of the claims . . . of the class."  Acevedo plainly meets the typicality requirement of Rule 23 because: (i) he suffered the same injuries as the absent class members; (ii) he suffered as a result of the same course of conduct by Defendants; and (iii) his claims are based on the same legal issues.  *See Ferrari v. Gisch*, 225 F.R.D. 599, 607 (C.D. Cal. 2004); *see also Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998); *Robidoux v. Celani*, 987 F.2d 931, 936-37 (2d Cir. 1993); *In re Oxford Health Plans, Inc. Sec. Litig.*, 182 F.R.D. 42, 50 (S.D.N.Y. 1998) (typicality inquiry analyzes whether plaintiffs' claims "arise from the same conduct from which

the other class members' claims and injuries arise").  Rule 23 does not require that the named plaintiff be identically situated with all class members.  It is enough if their situations share a common issue of law or fact.  *See Weiss v. York Hosp.*, 745 F.2d 786, 808-09 (3d Cir. 1984).  A finding of commonality frequently supports a finding of typicality.  *See Gen. Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 158 n.13 (1982) (noting that the typicality and commonality requirements tend to merge).

In this case, the typicality requirement is met because Acevedo's claims are identical to, and neither compete nor conflict with the claims of the other Class members.  Acevedo, like the other members of the Class, acquired Galectin securities during the Class Period at prices artificially inflated by Defendants' materially false and misleading statements, and was damaged thereby.  Thus, his claims are typical, if not identical, to those of the other members of the Class because Acevedo suffered losses similar to those of other Class members and his losses result from Defendants' common course of wrongful conduct.   Accordingly, Acevedo satisfies the typicality requirement of Rule 23(a)(3).  *See Weiss*, 745 F.2d at 809; *see also In re Drexel Burnham Lambert Group*, 960 F.2d 285, 291 (2d Cir. 1992).

### b.  Acevedo will Adequately Represent the Class

Moreover, Acevedo is an adequate representative for the Class.  Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class."  The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class.  15 U.S.C. §78u-4(a)(3)(B); *see Crawford v. Honig,* 37 F.3d 485, 487 (9th Cir. 1994) (citation omitted).

Acevedo's interests are clearly aligned with those of the other members of the Class.  Not only is there no evidence of antagonism between Acevedo's interests and those of the Class, but Acevedo has a significant and compelling interest in prosecuting the Consolidated Action based on the large financial losses he has suffered as a result of the wrongful conduct alleged in these Consolidated Action.  This motivation, combined with Acevedo's identical interest with the members of the Class, demonstrates that Acevedo will vigorously pursue the interests of the Class.  In addition, Acevedo has retained counsel highly experienced in prosecuting securities class actions, and will submit its choice to the Court for approval pursuant to 15 U.S.C. § 78u-4(a)(3)(B)(v).  Therefore, Acevedo will prosecute the Consolidated Action vigorously on behalf of the Class.

Accordingly, at this stage of the proceedings, Acevedo has made the preliminary showing necessary to satisfy the typicality and adequacy requirements of Rule 23 and, therefore, satisfies 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  In addition, because Acevedo has sustained the largest amount of losses from Defendants' alleged wrongdoing, it is, therefore, the presumptive lead plaintiff in accordance with 15 U.S.C. § 78u-4(3)(B)(iii)(I), and should be appointed as such to lead these Consolidated Action.

**B.     Acevedo's Choice of Counsel Should Be Approved**

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval.  15 U.S.C. § 78u-4(a)(3)(B)(v).  The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class."  15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Acevedo has selected and retained Levi & Korsinsky as the proposed Lead Counsel, and Palumbo Bergstrom as Liaison Counsel for the Class.  The members of Levi & Korsinsky have

extensive experience in successfully prosecuting complex securities class actions such as these, and are well-qualified to represent the Class.  *See* Apton Decl., Ex. D (the firm resume of Levi & Korsinsky).

## IV.        CONCLUSION

For the foregoing reasons, Acevedo respectfully requests that this Court: (1) appoint Acevedo as Lead Plaintiff for the Class in the Action; and (2) approve Levi & Korsinsky as Lead Counsel and Palumbo Bergstrom as Liaison Counsel for the Class.

Dated:  September 29, 2014                    Respectfully submitted,

PALUMBO BERGSTROM LLP


    */s/Sean P. Connell*
Sean P. Connell, Esq. [7311]
700 South Third Street
Las Vegas, Nevada 89101
T: (877) 882-1979
F: (949) 440-7240


LEVI & KORSINSKY LLP
Nicholas I. Porritt, Esq. (*to be admitted pro hac vice*)
Adam M. Apton, Esq. (*to be admitted pro hac vice*)
1101 30th Street N.W., Suite 115
Washington, D.C. 20007
T: (202) 524-4290
F: (202) 333-2121

*Attorneys for Movant Isreal Acevedo*