Mark Wray (Nevada Bar #4425)
Law Offices of Mark Wray
608 Lander Street
Reno, Nevada 89509
(775) 348-8877
(775) 348-8351 fax
mwray@markwraylaw.com

*Proposed Liaison Counsel for the Class*

Ramzi Abadou
Ramzi.abadou@ksfcounsel.com
KAHN SWICK & FOTI, LLP
505 Montgomery Street, 10th Floor
San Francisco, CA 94111
Telephone: (415) 874-3047
Facsimile: (504) 455-1498

Lewis S. Kahn
lewis.kahn@ksfcounsel.com
Melinda A. Nicholson
melinda.nicholson@ksfcounsel.com
Michael J. Palestina
michael.palestina@ksfcounsel.com
KAHN SWICK & FOTI, LLC
206 Covington St.
Madisonville, LA 70447
Telephone: (504) 455-1400
Facsimile: (504) 455-1498

*Proposed Lead Counsel for the Class*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| IN RE GALECTIN THERAPEUTICS, INC. SECURITIES LITIGATION | ) ) **Consolidated Civil Action No.:** ) **3:14-CV-399-RCJ** ) ) <u>CLASS ACTION</u> ) |

**THE CASTILLO GROUP'S MOTION FOR APPOINTMENT OF LEAD**
<u>**PLAINTIFF AND APPROVAL OF LEAD PLAINTIFF'S CHOICE OF COUNSEL**</u>

Rene Castillo, on his own behalf and on behalf of Lucia Castillo, the Eleonora Castillo Revocable Living Trust, and the One Minute Miracle, Inc. (collectively, "the Castillo Group") hereby respectfully moves this Court for an order: (1) appointing the Castillo Group as lead plaintiff for the class pursuant to §21D(a)(3)(B) of the Securities Exchange Act of 1934 ("Exchange Act") (15 U.S.C. §78u-4(a)(3)(B)); and (2) approving the Castillo Group's selection of Kahn Swick & Foti, LLC ("KSF") as lead counsel and the Law Offices of Mark Wray ("Wray") as liaison counsel.[1]  This Motion is made on the grounds that the Castillo Group is the "most adequate plaintiff."  *See* 15 U.S.C. §78u-4(a)(3)(B).  Further, the Castillo Group has selected and retained counsel with vast experience in prosecuting securities class actions to serve as lead counsel.  In support of this Motion, the Castillo Group files herewith a memorandum of points and authorities and the declaration of Mark Wray.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.     PRELIMINARY STATEMENT

This shareholder action is brought on behalf of all persons who purchased the securities of defendant Galectin Therapeutics, Inc. ("Galectin" or the "Company") between January 6, 2014 and July 28, 2014, inclusive (the "Class Period").  The action alleges violations of Sections 10(b) and 20(a) of the Exchange Act, as amended by the Private Securities Litigation Reform Act of 1995 ("PSLRA") (15 U.S.C.§§ 78j(b) and 78(t)), and Rule 10b-5

---

[1]     As set forth in ¶7 of his Certification, Mr. Castillo serves as attorney-in-fact for and has full unfettered investment discretion and decision-making authority to file suit and recover damages under the federal securities laws in this matter on behalf of Lucia Castillo, the Eleonora Castillo Revocable Living Trust, and One Minute Miracle, Inc. *See* the Sworn Certification of Rene Castillo, attached as Exhibit A to the Declaration of Mark Wray in Support of the Castillo Group's Motion for Appointment of Lead Plaintiff and Approval of Lead Plaintiff's Choice of Counsel (hereinafter, "Wray Decl."). Mr. Castillo, a United States resident and citizen, is the president and owner of a vitamin and natural health services company.

promulgated thereunder (17 C.F.R.§ 240.10b-5).

The Castillo Group should be selected as lead plaintiff because, to the best of its knowledge, it has the largest financial interest in the relief sought by the class.[1]  *See In re Cavanaugh*, 306 F.3d 726, 729-30 (9th Cir. 2002); *Stocke v. Shuffle Master, Inc.*, 2007 U.S. Dist. LEXIS 91535, at *5-*6 (D. Nev. 2007) (appointing investor group with the largest collective financial interest).  In addition, the Castillo Group satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure ("Rule 23") because its claims are typical and it will fairly and adequately represent the class' interests.  *See Shuffle Master*, 2007 U.S. Dist. LEXIS 91535, at *6-*9.  Finally, in accordance with the PSLRA, the Castillo Group's selection of lead and liaison counsel should be approved.  *See* §IV, *infra*; 15 U.S.C. §78u-4(a)(3)(B)(v).

## II.   FACTUAL BACKGROUND

This case arises from a classic "pump and dump" scheme accomplished through the illicit use of a stock promotion firm to issue a series of misleading promotional campaigns in an attempt to lure investors to purchase Galectin stock and artificially prop up Galectin's stock price. Specifically, under the Individual Defendants' direction and on their watch, Galectin retained Emerging Growth Corp. (also known as Emerging Growth LLC) ("Emerging Growth"), a penny stock promotion firm, as the vehicle for conducting its misleading promotional campaigns.  When Galectin began using Emerging Growth's "services" in June 2013, Galectin's stock was trading at approximately $4 per share.

Through this campaign, Emerging Growth published a series of what appeared to be independently authored "articles" via special press releases.  And, while Emerging Growth touted Galectin and its stock, the Individual Defendants issued a series of false and misleading statements regarding the Phase I study of GR-M-02.  The stock promotion campaign, together

with the Individual Defendants' false and misleading statements, had the desired effect of artificially propping up and increasing Galectin's stock price. Indeed, Galectin stock closed as high as $15.32 per share as recently as July 25, 2014. And, while Galectin's stock price was artificially inflated due to the Emerging Growth stock promotion campaign and the Individual Defendants' misleading statements, certain of the Individual Defendants, including members of Galectin's Board of Directors, sold or orchestrated sales of Galectin stock by funds they controlled at artificially inflated prices.

On July 25, 2014, however, the Individual Defendants' scheme began to unravel when Adam Feuerstein ("Feuerstein"), a senior columnist for *TheStreet.com*, tweeted "$GALT paying penny stock promoters to issue misleading PRs posted to Y!" On July 28, 2014, Feuerstein published an article on *TheStreet.com* entitled "Galectin Pays Stock Promoters to Entice Retail Investors" in which he described the Emerging Growth stock promotion scheme orchestrated by the Individual Defendants in detail. Also on July 28, 2014, Bleecker Street Research published an article on *SeekingAlpha.com* claiming that Galectin "has strong ties to stock promoters' engaging in a misleading brand awareness campaign aimed at boosting its stock price."

On July 29, 2014, a new presentation was published on Galectin's website detailing the results of the second cohort of patients in GR-MD-02's Phase 1 clinical trial, which analysts described as "poor." Feuerstein was more direct, publishing an article that same day on *TheStreet.com* entitled "Galectin Drug is a Fatty Liver Flop." Therein, Feuerstein revealed that "Galectin's experimental drug GR-MD-02 flopped in a phase I study of nonalcoholic steatohepatitis (NASH), a severe form of fatty liver disease." Feuerstein further reported that "[a]cross just about every biomarker for efficacy Galectin thought to measure, GR-MD-02 showed no difference from placebo."

Following these series of adverse releases and results, Galectin shares fell $8.84 per share, or nearly 61%, closing at just $5.70 per share on July 29, 2014.  The following day, on July 30, 2014, the Individual Defendants caused Galectin to issue a press release entitled "Galectin Therapeutics Issues Statement on GR-MD-02 Development Program," in which they admitted to hiring Emerging Growth in 2013 and that Emerging Growth wrote thirteen "articles" promoting Galectin stock.

### III.    ARGUMENT

#### A.    The PSLRA's Lead Plaintiff Provisions

The PSLRA establishes the procedure for the appointment of a lead plaintiff in "each private action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(1).  First, the plaintiff who files the initial action must publish a notice to the class within twenty days, informing class members of their right to file a motion for appointment as lead plaintiff.  *See* 15 U.S.C. §78u-4(a)(3)(A)(i).  Here, in connection with the filing of the first-filed action, notice was published on *Business Wire* on July 30, 2014.  *See* Wray Decl., Ex. B.  Within sixty days of the publication of notice, any person who is a member of the proposed class may apply to be appointed as lead plaintiff, whether or not they have previously filed a complaint in the action.  *See* 15 U.S.C. §78u 4(a)(3)(A)(i)(II).

Second, the PSLRA provides that within ninety days after publication of notice, courts shall consider any motion made by a class member and shall appoint as lead plaintiff the member or members of the class that the court determines to be most capable of adequately representing the interests of class members.  *See* 15 U.S.C. §78u-4(a)(3)(B)(i).  In determining the "most adequate plaintiff," the PSLRA provides that:

> [T]he court shall adopt a presumption that the most adequate plaintiff in any private action arising under this [Act] is the person ***or group of persons*** that –
>
> (aa) has either filed the complaint ***or made a motion*** in response to a notice…;
>
> (bb) in the determination of the court, has the ***largest financial interest*** in the relief sought by the class; and
>
> (cc) otherwise ***satisfies the requirements of Rule 23*** of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii) (emphasis added); *Cavanaugh*, 306 F.3d at 729-30.

The time period in which class members may move to be appointed lead plaintiff in this case expires September 29, 2014. *See* 15 U.S.C. §78u-4(a)(3)(A)-(B). Pursuant to the PSLRA's provisions, and within the requisite time frame after publication of the required notice, the Castillo Group has timely moved this Court to be appointed lead plaintiff on behalf of all members of the class. *See Kuriakose v. Fed. Home Loan Mortgage Co.*, 2008 U.S. Dist. LEXIS 95506, at *2 (S.D.N.Y. 2008). In addition, the Castillo Group has selected and retained counsel experienced in the prosecution of securities class actions to represent itself and the class. *See* Wray Decl., Ex. C. Accordingly, the Castillo Group satisfies the PSLRA's filing requirements and is entitled to have its application for appointment as lead plaintiff considered by the Court.

  **B.**   **The Castillo Group Is the "Most Adequate Plaintiff"**

    **1.**   **The Castillo Group Has the Largest Financial Interest in the Relief Sought by the Class.**

The Castillo Group lost approximately $159,117.28 in connection with its Class Period purchases of Galectin stock. To the best of the Castillo Group's knowledge, this represents the largest known financial interest in the relief sought by the class. *See*

6

*Cavanaugh*, 306 F.3d at 730-32; *Shuffle Master*, 2007 U.S. Dist. LEXIS 91535, at *5-*6.

### 2. The Castillo Group Satisfies Rule 23.

In addition to possessing the largest financial interest, the lead plaintiff must also "otherwise satisf[y] the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. §78u-4(a)(3)(B)(iii)(I)(cc). While the PSLRA requires that a lead plaintiff meet the requirements of Rule 23(a), at this stage of the litigation, only a preliminary showing is required with respect to typicality and adequacy. *See Teamsters Local 617 Pension and Welfare Funds v. Apollo Group, Inc.*, 2007 U.S. Dist. LEXIS 67354, at *16-*20 (D. Ariz. 2007). Consequently, in deciding motions for appointment of lead plaintiff, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a), and defer examination of the remaining requirements until the lead plaintiff moves for class certification. *See Shuffle Master*, 2007 U.S. Dist. LEXIS 91535, at *7 (citing *Cavanaugh*, 306 F.3d at 730 n.5).

#### a. The Castillo Group is Typical.

Under Rule 23(a)(3), the claims or defenses of the representative party must be typical of those of the class. The test of typicality "'is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct.'" *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992). However, the claims of the lead plaintiff need not be identical to the claims of the class to satisfy typicality. *Id*.

Here, the Castillo Group is typical because, just like all other class members, it: (1) purchased or acquired Galectin securities during the Class Period; (2) purchased Galectin securities in reliance upon the alleged materially false and misleading statements issued by

defendants; and (3) suffered damages thereby. *See id*. Thus, the Castillo Group's claims are typical of those of other class members because its claims and the claims of other class members arise out of the same course of events. *See* 7 Herbert Newberg & Alba Conte, Newberg on Class Actions §22.24, at 107-08 (4th ed. 2002) ("[t]he majority of class action decisions support the view that when it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is met").

### b.   The Castillo Group is Adequate.

Under Rule 23(a)(4), the representative party must "fairly and adequately protect the interests of the class." To determine adequacy, the Court must evaluate: "(1) whether the interests of the class representatives coincide with those of the class, and (2) whether the class representative has the ability to prosecute the action vigorously." *Shuffle Master*, 2007 U.S. Dist. LEXIS 91535, at *8-*9. Here the Castillo Group is adequate to represent the class. Its interests are aligned with the interests of the class because both suffered from artificial inflation of the price of Galectin securities and would benefit from the same relief. Additionally, there is no evidence of antagonism between the Castillo Group and the class and its members have certified their willingness to serve as representatives of the class.

Because the Castillo Group suffered substantial losses as a result of its Class Period purchases of Galectin stock, it is committed to vigorously prosecuting this litigation and maximizing the recovery for the class. *See* Wray Decl., Ex. A. Moreover, as shown below, the Castillo Group's proposed counsel are highly qualified, experienced, and able to conduct this complex litigation in a professional manner. Thus, the Castillo Group satisfies the typicality and adequacy requirements of Rule 23 for the purposes of this motion. *See Frank*

8

*v. Dana Corp.*, 237 F.R.D. 171, 173 (N.D. Ohio 2006).

### III.   THE CASTILLO GROUP'S CHOICE OF COUNSEL SHOULD BE APPROVED

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to the Court's approval.  *See* 15 U.S.C. §78u-4(a)(3)(B)(v).  Courts should not disturb lead plaintiff's choice of counsel unless it is necessary to "protect the interests of the class." 15 U.S.C. §78u-4(a)(3)(B)(iii)(II)(aa); *see also Cavanaugh*, 306 F.3d at 734.  The Castillo Group has selected KSF as lead counsel for the class.  The firm is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors.  *See* Wray Decl., Ex. C.  Thus, the Court may be assured that, in the event this motion is granted, the members of the class will receive the highest caliber of legal representation available from KSF.  In addition, Wray has ample experience in litigation in Nevada.  *See* Wray Decl., Ex D.  Accordingly, the Court should approve the Castillo Group's selection of lead counsel and liaison counsel.

### IV.   CONCLUSION

For the foregoing reasons, the Castillo Group respectfully requests that the Court: (1) appoint the Castillo Group as Lead Plaintiff; and (2) approve its selection of KSF as Lead Counsel and Wray as Liaison Counsel.

Dated: September 29, 2014   			LAW OFFICES OF MARK WRAY

By:      /s/ Mark Wray
Mark Wray, Nev. Bar. #4425
608 Lander Street
Reno, Nevada 89509
(775) 348-8877
(775) 348-8351 fax
mwray@markwraylaw.com

*Local Counsel for Lead Plaintiff Movant and Proposed Liaison Counsel for the Class*

Ramzi Abadou
Ramzi.abadou@ksfcounsel.com
KAHN SWICK & FOTI, LLP
505 Montgomery Street, 10th Floor
San Francisco, CA 94111
Telephone: (415) 874-3047
Facsimile: (504) 455-1498

Lewis S. Kahn
lewis.kahn@ksfcounsel.com
Melinda A. Nicholson
melinda.nicholson@ksfcounsel.com
Michael J. Palestina
michael.palestina@ksfcounsel.com
KAHN SWICK & FOTI, LLC
206 Covington St.
Madisonville, LA 70447
Telephone: (504) 455-1400
Facsimile: (504) 455-1498

*Counsel for Lead Plaintiff Movant and Proposed Lead Counsel for the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on September 29, 2014, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system. Notice of this filing will be sent to all counsel of record by operation of the Courts electronic filing system.

/s/ Mark Wray